```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                         04-CR-314 (JMR)
                         08-CV-4475 (JMR)
```

United States of America    )
                            )           AMENDED
     v.                     )           ORDER
                            )
Patrick Forciea             )

Defendant, Patrick Forciea, pro se, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He also seeks to supplement his filings [Docket No. 38], an evidentiary hearing [Docket No. 39], and release pending disposition of the instant motion [Docket No. 40]. Defendant's motion to supplement is granted. All remaining motions are denied.

I.  Background

Defendant was charged by Information with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and four counts of wire fraud, in violation of 18 U.S.C. § 1343. The Information charged that, between May 2003 and April 2004, defendant made false statements to fraudulently obtain millions of dollars in loans from business investors and federally insured banks.

Throughout this time, defendant took prescribed doses of Zoloft, Wellbutrin, and Effexor for depression. In May 2004, defendant went to an Arizona inpatient mental health facility where he was first diagnosed with, among other things, bipolar disorder. The medical staff immediately took him off of the Wellbutrin and Effexor. After failing to respond to treatment, he was given six

electroconvulsive therapy ("ECT") treatments. Defendant claims these treatments "resulted in severe memory loss and disorientation." (Petitioner's Memorandum [Docket No. 20] at 3.) Upon his return to Minnesota in June, the bipolar diagnosis was confirmed.

On July 30, 2004, defendant pleaded guilty to the crimes charged in the Information. At his plea hearing, the Court questioned defendant at length about his mental health treatment and its effect on his ability to understand what was happening. P. at 4-9.[1] Defendant stated he was taking Zoloft and lithium, and confirmed that his mind was clear and that he accurately perceived what he was doing. P. at 5-6. Defense counsel informed the Court of defendant's ECT treatments, and advised that a recent examination by a psychiatrist found defendant competent. P. at 6-9. The Court then found defendant competent; defense counsel agreed. Id.

After the hearing, defense counsel retained psychiatrist Karen Bruggemeyer, who further evaluated plaintiff's mental health. Dr. Bruggemeyer examined defendant four times, totaling 7.5 hours. Her August 26, 2004, report was provided to the United States Probation Office and the Court.

Dr. Bruggemeyer's report discussed defendant's psychiatric

---

[1] For convenience, this Order refers to the plea transcript as "P." and the sentencing transcript as "S."

2

history, including a period when he was mistakenly prescribed antidepressants. Dr. Bruggemeyer related that defendant said his "manias went wild" when he was prescribed Wellbutrin, which he characterized as the "wrong" prescription. Bruggemeyer Report at 11. Defendant also told Dr. Bruggemeyer he "wasn't properly diagnosed," and there was "a good chance [he] wouldn't have done any of this" with proper diagnosis and treatment. Id. at 15.

Dr. Bruggemeyer concluded defendant's mental illness, specifically his manic symptoms, caused him to commit the crimes. She wrote, "The likelihood that Mr. Forciea would have committed these same actions if not mentally ill, in my opinion, is negligible." Id. at 15.

Defendant appeared for sentencing on November 16, 2004. The Court had reviewed Dr. Bruggemeyer's report and asked defense counsel "whether you think I ought to get an independent psychologist or psychiatrist in this case." S. at 7. Counsel did not object (S. at 11), but indicated he did not believe defendant had a viable mental illness or insanity defense, nor a diminished capacity basis for a downward departure. S. at 7-8. The Court inquired whether Dr. Bruggemeyer - who was present - ought to testify. Defense counsel agreed that "might be a good idea." S. at 28-29.

Dr. Bruggemeyer testified to defendant's having been "prescribed medications that actually made him worse." S. at 35.

3

She said, "He was prescribed medications that made him manic." S. at 35. The Court asked her whether defendant "was mentally ill in a fashion that he would have an opportunity to be exonerated under the federal criminal law?" Dr. Bruggemeyer answered, "No." The Court asked, "There's no question about that?" Dr. Bruggemeyer answered, "No question in my mind." S. at 36-37.

Defendant received a sentence of 96 months' imprisonment, followed by 5 years' supervised release. The Court also ordered defendant to pay over $5 million in restitution. Judgment was entered on November 19, 2004. Defendant did not appeal.

Defendant continued taking Zoloft while in custody. He claims treatment with Zoloft was "dangerous and counterproductive" and caused seizures, as a result of which he was sent to the Federal Medical Center in Rochester, Minnesota, in November 2006. (Petitioner's Reply Memorandum at 2-4.)

In his present motion, defendant claims he did not discover "the impact of Wellbutrin, Zoloft and Effexor on a Bi-polar condition" until January 2007, and it was only in September 2007, after a conversation with a doctor and a lawyer, that he "understood the legal impact of the errors in his medication and that these errors placed him in a mental condition that prohibited him from determining right from wrong." (Petitioner's Memorandum at 3-4.)

On December 13, 2007, defendant filed a motion with the Eighth

Circuit Court of Appeals seeking permission to file a successive motion under 28 U.S.C. § 2255. On June 10, 2008, the Court of Appeals denied the request without prejudice, observing there was no initial § 2255 motion.

Defendant filed the instant § 2255 motion on July 7, 2008.

II. Analysis

A. Timeliness

A motion under § 2255 may be brought within one year after defendant's conviction becomes final. 28 U.S.C. § 2255(f)(1). Defendant's conviction became final on November 29, 2004; his motion was filed more than three years later.

As such, the present motion is untimely, unless saved by the statute's discovery rule. A § 2255 motion may be timely if filed within one year of the date "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4); Moore v. United States, 173 F.3d 1131, 1133 n. 1 (8th Cir. 1999).

Seeking to invoke the discovery rule, defendant argues his one-year period began in September 2007, when he first "understood the legal impact of the errors in his medication." (Petitioner's Memorandum at 3-4.) Given the record facts in this case, defendant's reliance on the discovery rule is misplaced.

His testimony, and Dr. Bruggemeyer's report and testimony, make clear that defendant knew he had been misdiagnosed in May 2004

when he was taken off two of three antidepressants.  His bipolar diagnosis was confirmed in June 2004.  He did not enter his plea until July 30, 2004, at which time he confirmed his mind was clear.

After defendant's plea, Dr. Bruggemeyer examined him and reported his criminal behavior was the result of manic episodes.  Her report reflects defendant's statement that he received the "wrong" medication and "wasn't properly diagnosed."  This strongly suggests he knew these facts no later than August 2004.  He certainly knew he had been misdiagnosed and given medication which caused or intensified his manic episodes by the time of his November 2004 sentencing hearing.  On that occasion, Dr. Bruggemeyer testified to these facts.  Defendant's misdiagnosis, and any effects on his mental state, were squarely presented to the Court at sentencing.

In his reply memorandum, which the Court has considered, defendant argues he delayed filing this motion because the Bureau of Prisons failed to timely provide treatment for his bipolar disorder.  He notes he was not placed at FMC-Rochester until November 2006, and denies that during his first year there, he "was . . . in a position to fully comprehend any number of intellectual challenges outside of his life inside the hospital [and] the challenges he was facing with his bipolar disorder." (Petitioner's Reply at 5.)  He now states he was not "in full remission" until May 29, 2008.  Id.

Defendant has submitted supplemental materials [Docket No. 38] which the Court has also considered. These materials give more details of his misdiagnosis and the effect of his antidepressant prescriptions between 2001 and 2004. Defendant now claims he was the victim of medical malpractice. He also, but somewhat tangentially, advises the Court his Global Assessment of Functioning scores in 2003 and 2004 were actually 10 points lower than previously estimated. From this, he advances his own view that his mental illness was more severe than was originally recognized. The Court expresses no opinion whether defendant's personal conclusions are accurate. But even assuming these claims are true, they are neither new facts, nor grounds for a § 2255 claim.

Defendant has simply failed to present any new evidence. Instead, he claims the Court should now review his 2001-to-the-present medical records, and attempt "to determine if any new information about [his] mental health condition in 2001-2004 has been learned that may have played a role in his behavior during that time." He suggests that if the Court finds such evidence, it ought to determine whether any of this information "was not available to the Court in 2004," and if so, whether he might have received a lesser sentence if the Court had known of the information at the time of sentencing. (Petitioner's Reply at 8.) The Court declines this invitation. Defendant is the party who

bears the burden of marshaling any facts which could not have been discovered prior to September 2007. This he has failed to do. On this record, he may not avail himself of the discovery rule.

The record is clear: Defendant either knew the facts of his misdiagnosis or could have discovered them through the exercise of due diligence not later than his November 2004 sentencing. Accordingly, defendant's motion is untimely.

B. <u>Even if timely, the motion would be denied.</u>

Even assuming defendant's motion is timely, he has failed to provide a basis for the relief he seeks.

To the extent defendant claims a lack of mental capacity to commit the crime, this cannot be raised - nor considered by the Court - in a proceeding under § 2255. <u>Wheeler v. United States</u>, 340 F.2d 119, 121 (8th Cir. 1965). A defendant may only raise the issue of his competence to stand trial if the question "has not been raised and determined at the trial resulting in his conviction." <u>Id.</u>

Here, in the context of a guilty plea, the Court fully examined the issue of competence, both at the plea and sentencing hearings. The Court heard evidence on the point, reviewing Dr. Bruggemeyer's report and hearing her testimony. The psychiatrist extensively discussed defendant's prescription history and its effect on his ability to form an intent to commit a crime. She clearly stated her professional opinion that he was not legally

8

insane at the time the crimes were committed.

Defendant testified his mind was clear. His counsel agreed he was competent. On the basis of all of this, the Court made the determination that defendant was competent after being presented with extensive evidence of defendant's mental condition, including the erroneously-prescribed antidepressants and resulting manic episodes.

Finally, to the extent defendant suggests he was denied effective assistance of counsel because his attorney declined the Court's offer to appoint an independent psychiatric expert, the Court finds this claim has no merit.

To prevail on such a claim, defendant must show both that counsel's performance was deficient, and actual prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). Defendant must show counsel's deficient performance rendered the proceedings fundamentally unfair or unreliable. El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993). When determining if prejudice exists, the Court considers all the evidence. See Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The Court "need not address the competency of counsel's performance if the prejudice issue is dispositive." Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998).

Such is the case here. Defendant can show no prejudice from the purported failure to request a Court-appointed independent

psychiatrist. Defense counsel had already retained a psychiatrist who examined and reported on defendant's condition, medications, and competence prior to sentencing. Her report, as well as her live testimony, was before the Court at sentencing. Defendant's claim that "no medical evidence [was] available to the Court" at the time of sentencing is simply wrong.

Even if defendant's motion were timely and based on new evidence, the Court would still deny it on its merits.

The Court has considered whether it is appropriate to issue a certificate of appealability. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). The Court concludes that no issue raised in this petition is "debatable among reasonable jurists." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991)). Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(2).

III. Conclusion

For the foregoing reasons, IT IS ORDERED that:

1. Defendant's motion to supplement his filings [Docket No. 38] is granted.
2. Defendant's motion for an evidentiary hearing [Docket No. 39] is denied.
3. Defendant's motion for release pending disposition of his

motion under 28 U.S.C. § 2255 [Docket No. 40] is denied as moot.

4. Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Docket No. 19] is denied.

Dated:  June 30, 2009
         nunc pro tunc
         June 12, 2009

                                    s/ JAMES M. ROSENBAUM
                                    JAMES M. ROSENBAUM
                                    United States District Judge